UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| Deborah Shaw, | ) |
|     Plaintiff, | ) |
| vs. | ) |
| Lincoln National Life Insurance Company, | ) Case No. 2:22-cv-4117 |
|     and | ) |
| McDonald's Licensees Health & Welfare GIA, | ) |
|     Defendants. | ) |

# COMPLAINT

1. The Plaintiff, Deborah Shaw, by and through the undersigned counsel, Talia Ravis, files this complaint against Defendants Lincoln National Life Insurance Company (hereinafter "Lincoln"), and McDonald's Licensees Health and Welfare GIA (hereinafter "the LTD Plan").

2. This arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Deborah Shaw brings this action to enforce her rights under ERISA as authorized by 29 U.S.C. §1132 (a)(1)(B).

3. Ms. Shaw has at all times material hereto, been a citizen of Pettis County, Missouri.

4. Ms. Shaw is informed and believes that Defendant Lincoln is an Indiana corporation doing business in Pettis County, Missouri. Therefore, pursuant to 29 U.S.C. §1132(e)(2), venue is proper in this judicial district.

5. Lincoln issued the LTD Plan, Group Long Term Disability Policy Number GF384044442801, to Ms. Shaw's employer, McDonald's Corporation, for the benefit of its employees, agreeing to pay Ms. Shaw, as a participant of the LTD Plan, long-term disability ("LTD") benefits in the event she became disabled and unable to work.

6. The LTD Plan is a group long-term disability employee benefit plan that provides LTD benefits to participants of the LTD Plan in the event they become disabled on a long-term basis. The LTD benefit pays 66% of the employee's former salary. The benefits are payable as long as the participant remains totally and permanently disabled, through age 69 or through the Social Security Normal Retirement Age, whichever is longer.

7. Lincoln actually insures the LTD coverage to McDonald's Corporation employees.

8. Lincoln is the payor benefits under the LTD Plan

9. Lincoln processed and terminated Plaintiff's LTD claim.

10. Lincoln has a financial interest in Plaintiff's LTD claim.

11. Lincoln has a conflict of interest in Plaintiff's LTD claim.

## FACTUAL ALLEGATIONS

**1) Vocational Information**

12. Plaintiff began employment with McDonald's Corporation in December of 1995.

13. Plaintiff worked as a Restaurant Leadership Manager for McDonald's Corporation. In this position, Plaintiff's primary purpose included recruiting, leading, and developing people to execute outstanding QSC&V, build sales and control costs to deliver optimum business results for a single McDonald's restaurant. This role also involved a number of additional duties and responsibilities, including:

- Demonstrating and reinforcing the leadership behaviors and basis people minimums necessary to gain commitment from crew and leadership.
- Executing a plan based on an employee commitment measurement to increase employee's loyalty, satisfaction and pride.
- Knowing, enforcing, and educating crew and managers on all appropriate personnel policies, labor laws, security and safety procedures.
- Recruiting, selecting, and retaining an optimum number of crew, maintenance, and management.
- Leading the development and training of all restaurant employees.
- Overseeing and reviewing performance appraisals.
- Planning and conducting leadership meetings.
- Maintaining critical standards for raw and finished product quality, service speed and quality, cleanliness and sanitation.
- Modeling performance standards for all crew stations and maintenance as needed.
- Measuring external customer's satisfaction and executing plan to improve satisfaction with their McDonald's experience and increase their loyalty.
- Effectively scheduling to build the business on all day parts.
- Effectively developing and executing my store marketing plans.
- Conducting in-restaurant implementation of new products and procedures.
- Enforcing and managing all food safety and sanitation requirements and practices.
- Ensuring all security procedures are executed.
- Maintaining all physical plan aspects of the restaurant, including landscaping, building, equipment, etc.

- Projects and controls all P&L line items.
- Administering in-restaurant employee benefits and payroll procedures including reporting to national and regional offices.
- Using proper security and verification procedures when handling deposits and contents of the safe.
- Maintaining records for safety and appropriately documents contributions and performance in personnel file.
- Ensuring that all daily paperwork, weekly inventories and statistical reports are completed accurately and on a timely basis."

**2) The definition of "Disability" or "Disabled" under the LTD Plan.**

14. According to the terms of the LTD Plan, the definition of "disability" or "disabled" is as follows:

   *"Disability" or "Disabled", with respect to Long Term Disability, means:*
   *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

   *I. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

   *II. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."*
   [Form ADOP-DEF-3, page 14]

15. According to the terms of the LTD Plan, the definition of "material and substantial duties" is as follows:

   *"Material and Substantial Duties, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."*
   [Form ADOP-DEF-6.2, page 17]

16. The LTD Plan Defines "Any Occupation" as follows:

4

> *"Any Occupation means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."*
> [Form ADOP-DEF-2, page 13]

**3) Medical Information Supporting Ms. Shaw's Total Disability.**

17. In April of 2018, Ms. Shaw was forced to stop working as a Restaurant Leadership Manager for McDonald's Corporation due to the disabling effects of severe chronic psoriatic arthritis with active joint swelling and dactylitis, active synovitis bilateral metacarpal phalangeal and phalangeal-phalangeal joints, metatarsalgia, fibromyalgia, degenerative disc disease, failed back syndrome, Sacroiliitis, lumbar radiculopathy, lumbar disc disease, lumbar post-laminectomy syndrome, and chronic obstructive pulmonary disease ("COPD").

18. As a result of the conditions listed *supra*, Ms. Shaw suffers from chronic back pain, joint swelling and chronic joint pain in multiple areas throughout her body, muscle pain and muscle cramps, muscle and leg weakness, dactylitis, pinched nerves, body aches, radiating pain into limbs, stiffness, tingling, pain from scarring from her first back surgery, fatigue, lack of energy, abnormal walking, shortness of breath upon ambulation, and nausea.

19. Ms. Shaw, together with her physicians, attempted to treat her disabling conditions with medications, interventional pain management, epidural steroid injections, multiple surgeries, and a spinal cord stimulator, but nothing has provided her with enough relief to return to work.

20. Ms. Shaw's physicians have consistently held that she has remained totally disabled from performing the material and substantial duties of her own or any other occupation since

she was forced to stop working in April of 2018, and that she continues to remain totally and permanently disabled today.

**4) LTD Claim Information Under the LTD Plan.**

21. In April of 2018, after 23 years of employment with McDonald's, Ms. Shaw was no longer able to work due to the severity of her conditions.

22. Ms. Shaw applied for LTD benefits shortly after she was forced to stop working.

23. In July of 2018, the Social Security Administration awarded Ms. Shaw Social Security Disability benefits. In approving her claim, the Social Security Administration determined that Ms. Shaw was unable to perform "any substantial gainful activity" as of April 16, 2018.

24. In a letter dated October 24, 2018 Lincoln approved Ms. Shaw's claim for LTD benefits, acknowledging that Ms. Shaw is disabled from performing the material and substantial duties of her own occupation.

25. In a letter dated April 23, 2020, Lincoln abruptly terminated Ms. Shaw's claim for LTD benefits. In the termination letter, Lincoln preemptively terminated Ms. Shaw's LTD benefits alleging that Ms. Shaw would no longer be considered "disabled" under the terms of the LTD Plan as of October 14, 2020, when the definition of "disability" would change to require Ms. Shaw to prove that she is disabled from performing the material and substantial duties of "any occupation".

26. In November of 2020, with the help of undersigned counsel, Ms. Shaw appealed Lincoln's first termination decision.

27. As part of Ms. Shaw's appeal of the first termination of benefits, Ms. Shaw submitted to Lincoln evidence supporting the fact that her conditions are permanent and have not

6

Case 2:22-cv-04117-MDH   Document 1   Filed 08/10/22   Page 6 of 10

improved in any way. Documentation submitted with the appeal letter included Dr. John Lucio's response to Lincoln's termination of benefit, disagreeing with Lincoln's reasons for denial and in support of her claim; Family Nurse Practitioner Deanna Davenport's responses in support of Ms. Shaw's claim and in disagreement with Lincoln's termination; Dr. Julie Cahill's responses to Lincoln's termination of benefits, disagreeing with Lincoln's reasons for termination and a letter in support of Ms. Shaw's claim, Ms. Shaw's Social Security Disability Notice of Award letter, and updated medical records showing continuous treatment for her conditions and substantiating the fact that her condition has not improved in any way.

28. In December of 2020, Lincoln overturned the benefit termination and reinstated Ms. Shaw's claim. In the letter overturning the termination, Lincoln acknowledged that Ms. Shaw was disabled from her own occupation as a Restaurant Leadership Manager, as well as "any other occupation", as defined by the LTD Plan.

29. Then, after paying her claim for an additional 11 months, Lincoln terminated Ms. Shaw's claim for the second time in a letter dated October 20, 2021. In the second termination letter, Lincoln alleged that Ms. Shaw is not disabled from "any other occupation" and can return to working in one of two occupations Ms. Shaw had never performed before. At that time, Ms. Shaw was 63 years-old and had not worked due to her disability for more than three years.

30. With the help of undersigned counsel, Ms. Shaw appealed the second termination of her LTD benefits in a letter dated April 18, 2022.

31. As part of her appeal of the second benefit termination, Ms. Shaw submitted to Lincoln evidence supporting the fact that she has remained totally disabled from working in any

occupation since April of 2018 due to her physically disabling impairments; that her condition is permanent; and that her condition has not improved in any way, and had in fact worsened since the onset of her disability in April of 2018. Documentation submitted with the appeal letter included the sworn testimony of Dr. John Lucio, Ms. Shaw's treating pain management physician, attesting to the fact that she remains totally disabled; the Social Security Disability Notice of Award letter; and updated medical records proving continuous and consistent treatment for her disabling conditions.

32. In a letter dated July 15, 2022, Lincoln upheld its final denial of Ms. Shaw's LTD benefits, rendering Ms. Shaw's claim ripe for litigation under ERISA.

33. The medical information in Lincoln's claim file establishes that Ms. Shaw was entitled to receive long-term disability benefits under the LTD Plan for the entire duration of the benefit period.

34. Ms. Shaw's physicians have consistently and continually reported to Lincoln that Ms. Shaw continues to be totally disabled from any occupation.

35. Ms. Shaw provided significant proof of disability. Despite this proof, Defendants refused to pay Ms. Shaw her disability benefits.

36. In determining Ms. Shaw's LTD benefits, Lincoln acted as a fiduciary in the administration of Ms. Shaw's claim.

37. Lincoln, acting under a conflict of interest, breached its fiduciary duties set forth in ERISA §404, 29 U.S.C. §1104, in failing to act for the exclusive benefit of Ms. Shaw and in failing to act in accordance with the terms of the LTD Plan.

38. Ms. Shaw has exhausted her administrative remedies.

**CLAIMS FOR RELIEF**

**COUNT 1:     Wrongful Termination of Long Term Disability Benefits.**

39. The foregoing paragraphs are hereby re-alleged and are incorporated herein by reference.

40. From April of 2018 until the present, Ms. Shaw has remained unable to perform the material and substantial duties of any occupation.

41. Ms. Shaw has provided Lincoln and the LTD Plan with substantial evidence verifying her total disability and eligibility for continued LTD benefits under the LTD Plan.

42. Ms. Shaw's physicians have consistently reported that she is unable to work due to the seriousness of her conditions.

43. Lincoln and the LTD Plan have wrongfully terminated Ms. Shaw's claim for long-term disability benefits in violation of the LTD Plan and ERISA.

44. Lincoln and the LTD Plan have breached the LTD Plan and violated ERISA by failing to pay disability benefit payments to Ms. Shaw at a time when they knew, or should have known, that Ms. Shaw was entitled to those benefits under the terms of the LTD Plan.

45. Ms. Shaw is informed and believes and thereon alleges that Lincoln and the LTD Plan wrongfully terminated her LTD benefits under the LTD Plan by other acts or omissions of which Ms. Shaw is presently unaware, but which may be discovered in this future litigation and which Ms. Shaw will immediately make Defendants aware of once said acts or omissions are discovered by Ms. Shaw.

46. Following the termination of benefits under the LTD Plan, Ms. Shaw exhausted all administrative remedies required under the LTD Plan and ERISA.

47. Ms. Shaw has performed all duties and obligations on Ms. Shaw's part to be performed under the LTD Plan.

48. As a proximate result of the aforementioned wrongful conduct of Lincoln and the LTD Plan, Ms. Shaw has damages for loss of LTD benefits in a total sum to be shown at time of trial.

49. The wrongful conduct of Lincoln and the LTD Plan has created uncertainty where none should exist; therefore, Ms. Shaw is entitled to enforce her rights under the terms of the LTD Plan.

50. Lincoln abused its discretion by wrongfully terminating Ms. Shaw's LTD benefits.

51. By terminating Ms. Shaw's claim despite a plethora of evidence supporting her eligibility for benefits under the LTD Plan, Lincoln and the LTD Plan terminated Ms. Shaw's claim in bad faith.

WHEREFORE, the Plaintiff, Deborah Shaw, requests that this Honorable Court enter Judgment:

A. Finding that Deborah Shaw is entitled to LTD benefits and order the Defendants to pay all past due benefits and pay for future monthly benefits as they become due.

B. Award the Ms. Shaw interest in the amount of past due benefits; which remain unpaid.

C. Award Ms. Shaw her attorney's fees and costs.

D. Awarding all other relief as may be just and appropriate.

Dated: August 10, 2022

/s/Talia Ravis
Talia Ravis
MO Bar No. 58366
Law Office of Talia Ravis, PA
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
816-333-8955 (tel)
1-800-694-3016 (fax)
talia@erisakc.com
*Attorney for the Plaintiff, Deborah Shaw*